James M. Lindsay, State Bar No. 164758
Gene J. Stonebarger, State Bar No. 209461
LINDSAY & STONEBARGER
A Professional Corporation
620 Coolidge Drive, Suite 225
Folsom, CA 95630
Telephone: (916) 294-0002
Facsimile: (916) 294-0012

Harry W. Harrison, State Bar No. 211141
James R. Patterson, State Bar No. 211102
Cary A. Kinkead, State Bar No. 216545
HARRISON PATTERSON & O'CONNOR LLP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6990
Facsimile: (619) 756-6991

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DEEHAN, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>AMERIGAS PARTNERS, L.P., a Delaware limited partnership, dba AMERIGAS; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | CASE NO.: 08-CV-1009-BTM-JMA<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT'S OPPOSITION TO REMAND**<br><br>Date:　August 29, 2008<br>Time:　11:00 a.m.<br>Ctrm:　15<br>Judge:　Hon. Barry Ted Moskowitz |

Plaintiff Timothy Deehan (hereinafter referred to as "Plaintiff") hereby submits this memorandum of points and authorities in reply to Defendant Amerigas Partners, L.P.'s (hereinafter referred to as "Defendant") Opposition to Plaintiff's Motion to Remand this action to California Superior Court as follows:

## I.

## INTRODUCTION

This case is based entirely on violations of California law. The proposed class consists entirely of persons in California and every alleged violation in question took place in California. Indeed, if not for the technical "diversity of citizenship" claimed by Defendant, remand would be mandatory under CAFA's express provisions. *See* 28 U.S.C. 1332(d)(4)(A)(i).[1] Defendant is trying to squeeze this case into this Court through a loophole in CAFA providing broad removal jurisdiction so long as the defendant is not technically a citizen, and regardless of the state-law nature of the claims, in-state citizenship of the class members, or magnitude of in-state business being conducted by the Defendant. However, the one caveat is that the removing party must show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. Defendant has not carried this burden.

Defendant has improperly removed this action, claiming that it meets the jurisdictional limit under the Class Action Fairness Act (CAFA), 28 U.S.C. section 1332(d). It does not. Defendant's CAFA jurisdictional argument is predicated on pure speculation about the amount of overcharges incurred by class members. Defendant does this despite the fact that it's Opposition unequivocally proves that it has the ability to provide the Court with the exact amount in controversy in this matter. In the Ninth Circuit, it is Defendant's burden to show by a preponderance of the evidence that it has met the $5,000,000 CAFA jurisdictional limit, and this burden cannot be met with speculation.

///

///

---

[1] 28 U.S.C. § 1332(d)(4)(A)(i) states, in relevant part: "A district court shall decline to exercise jurisdiction…over a class in which greater than two thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; [and] at least 1 defendant is…a citizen of the State in which the action was originally filed…"

Defendant provides absolutely no evidence from which the amount of each putative class members' respective overcharges can be determined. This fact notwithstanding, Defendant hopes to persuade this Court that the amount in controversy is satisfied based on the <u>assumption</u> that each class member sustained damages – as a result of Defendant's overcharges – of approximately $84.57 each year during the four year period at issue in this case. Defendant then simply multiplies this amount by the number of class members to arrive at a fictitious amount of overall overcharges incurred by class members. Defendant, though, overlooks the fact that there is the possibility that many class members may not have been overcharged at all. Indeed, all Defendant has accomplished by way of its Opposition is showing this Court that there are 235 class members who have sustained damages in the amount of less than $80,000.00. Based thereon, it is clear that even the inclusion of punitive damages, civil penalties, and attorneys' fees to this total falls well short of the requisite $5,000,000.00.

Defendant cannot succeed in carrying its burden to prove that jurisdiction is proper based on such an unsubstantiated calculation. Indeed, this very type of speculation and incomplete calculation has been rejected by the Ninth Circuit; and should thus fail in this instance as well. Thus, Plaintiff requests that this action be remanded back to state court.

## II.

## **LAW AND ARGUMENT**

**A.   The Evidence Provided by the Defendant In Support of the Amount in Controversy is Inadequate to Meet its Burden.**

The Ninth Circuit has made it clear that under CAFA it is improper to rely on speculation, conjecture, and incomplete calculations to establish the amount in controversy is satisfied. No case exemplifies this rule of law more than the Ninth Circuit's opinion in <u>Lowdermilk v. U.S. Bank Nat'l Assoc.</u>, 479 F.3d 994 (9th Cir. 2007). In <u>Lowdermilk</u>, the defendant removed the case pursuant to CAFA. <u>Id</u>. Plaintiff filed a motion to remand arguing, *inter alia*, that the amount in controversy was not satisfied. <u>Id</u>. The Ninth Circuit agreed. <u>Id</u>. Specifically, the Ninth Circuit found that the defendant provided "thin support" for how it arrived at $5 million. <u>Id</u>. at 1001. The Ninth Circuit paid special attention that the defendant, in

calculating the amount of controversy, failed to take into account the various amounts of the class members' respective damages. Id. The omission proved fatal to defendant's removal. Id. ("Many employees may have been paid only a few days late and, consequently, would be entitled to fewer days of penalty wages. Holding all other factors constant, if all 7,571 potential members of the class were paid only one day late, the aggregate claim would be worth only $439,118. In order to break the $5,000,000 minimum [of CAFA], all members of the class would have to be paid on average twelve days late. We have no evidence to support such a supposition. The problem is only compounded if Defendant is wrong about both the class size and the number of late days."). The Court, in Lowdermilk, ultimately held that "absent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy." Id.

In this case, Defendant's opposition suffers from the very defects that proved fatal to CAFA jurisdiction in Lowdermilk. In its opposition, Defendant states that there are approximately 14,082 class members of which 12,075 were provided estimated readings each year during the four year period at issue in this case. These facts, in and of themselves, do nothing to assist Defendant in satisfying its burden. However, Defendant, through declarations submitted by its employees, provides the Court with a sampling of 235 class members who had their meters estimated from 2007-2008. Defendant states that these 235 individual class members incurred an average overcharge of $84.57 during said period. Defendant then simply attributes this amount to each and every one of the 12,075 estimated readings to arrive at a figure of $4,084,731.00.

The above-referenced calculation submitted to the Court by Defendant is speculative, incomplete, and insufficient to satisfy its burden to prove the existence of this Court's jurisdiction. See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404-05 (9th Cir. 1996). Indeed, just as with the Defendant in Lowdermilk, Defendant wholly fails to provide facts indicating that each and every one of the 14,082 purported class members incurred overcharges in the amount of $84.57 or any overcharges at all for that matter. Rather, Defendant, by its own admission, derives the figure of $4,084,731.00 by "assuming the $84.57 figure and the more than

12,075 estimates for 2007-2008 are representative for the full four year period of the class." *See* Defendant's Opposition at 15:04-08 (emphasis added). This is the very method that was rejected by the Ninth Circuit in <u>Lowdermilk</u>, which held that a calculation based on averages was insufficient. Defendant has not provided any facts that support that <u>each reading</u> resulted in <u>each class member</u> being overcharged in the amount of $84.57.[2] Indeed, numerous class members may have been undercharged, overcharged, or neither. Defendant's calculation is silent on this issue and fatal to jurisdiction under CAFA. Thus, all Defendant has accomplished is proof that some random sample of 235 class members were overcharged less than $80,000.00 during the four year period at issue, i.e., 235 (class members) x $84.57 (avg. overcharge for 235 class members) x 4 (years) = $79,495.80. This is well short of the $5,000,000 minimum required by CAFA.

Defendant's failure to present evidence as to the number of class members who were overcharged is significant considering that Defendant's Opposition acknowledges its ability to do so. However, Defendant's Opposition merely establishes the number of persons who are class members and asserts that there are 235 class members who were overcharged. Nowhere does Defendant provide any facts regarding the total number of class members who incurred overcharges, which in theory could range anywhere between 235 and 14,082. However, it is not that Defendant is incapable of providing the Court with this evidence. Indeed, Defendant could have culled from its records how many persons were overcharged. After all, Defendant did so in order to submit evidence regarding 235 class members in support of its Opposition. As such, Defendant's reliance on averages, estimates, and speculation is insufficient to carry its burden.

B. **Defendant's Inaccurate Calculation of Overcharges Incurred by Class Members Substantially Reduces its Calculation of Civil Penalties, Punitive Damages, and Attorneys' Fees.**

Defendant's erroneous and unsupported assertion that each and every class member has incurred overcharges in the amount of $84.57 not only devastates its argument with respect to the

---

[2] In its Opposition, Defendant also claims that any overcharges were voluntarily refunded or offset on a subsequent bill. This fact would even further decrease the amount in controversy as class members would only be entitled to recover interest on said overcharges. Using Defendant's numbers, assuming that a class member was overcharged $84.57 and this money was held for one year and subsequently refunded; said class member would be entitled to less than $8.50 assuming an interest rate of 10% per annum, substantially reducing the alleged amount in controversy.

amount of compensatory damages at issue but also its contentions as to civil penalties, punitive damages, and attorneys' fees. Indeed, as stated above, Defendant's Opposition, and the purported facts contained therein, merely proves that there are at least 235 class members who were overcharged less than $80,000.00 during the relevant time period. As such, Defendant's calculations of other damages in this matter can <u>only</u> be based on these 235 class members and their $80,000.00 in sustained overcharges. As will be explained below, this dramatically decreases the amount of controversy.

With respect to civil penalties in this case, Defendant asserts that the imposition of the minimum penalty available under California Public Utility Code section 2107 ($500.00) along with the overcharges incurred by each class member places the amount in controversy in excess of $5,000,000.00. *See* Opposition at 10:12-18. Notwithstanding the fact that this very type of incomplete calculation has been rejected by the Ninth Circuit (<u>Sanchez</u>, 102 F.3d at 404-05; <u>Lowdermilk</u>, 479 F.3d at 1001), Defendant's calculation is simply wrong based upon the facts it has placed before this Court. As stated above, Defendant's Opposition merely proves the existence of 235 class members and less than $80,000.00 in controversy. Accordingly, if each of the proven 235 class members received $500.00 in civil penalties the total penalty imposed upon Defendant would be $117,500.00 and place the total amount in controversy at approximately $197,500.00 ($80,000.00 (compensatory damages) + $117,500.00 (civil penalties). Again, this is well short of the $5,000,000.00 required by CAFA.

Based on the fact that there is only $197,500.00 in controversy after calculating compensatory damages and civil penalties for the 235 class members Defendant has provided, Defendant's calculation of punitive damages and attorneys' fees must be substantially reduced. Specifically, Defendant assumes a 1:1 ratio of compensatory damages to punitive damages to arrive its figure – one which has already been proven to rely on an incomplete premise. Nevertheless, assuming Defendant's 1:1 ratio, the 235 class members could be entitled to punitive damages in the amount of approximately $80,000.00. Thus, Defendant's Opposition merely provides that the amount in controversy with compensatory damages, punitive damages, and civil penalties is $277,500.00. Again, this amount is far short of the requisite $5,000,000.00.

1  Similarly, Defendant's assertion of attorneys' fees is grossly overestimated based upon the facts
2  it has provided in its Opposition. Ninth Circuit precedent has established 25% of recovery in
3  class action cases as a fair estimate of attorneys' fees. Staton v. Bowing Co., 327 F.3d 938, 969
4  (9th Cir. 2003). Based on the evidence presented by the Defendant, the amount of attorneys'
5  fees in this matter would total less than $70,000.00 and would bring the total amount in
6  controversy in this case to $346,875.00. In this case, it is clear that Defendant's Opposition falls
7  well short of establishing that the amount in controversy exceeds the jurisdictional minimum
8  required for this Court.

### C. Because Defendant Has Failed To Establish Federal Jurisdiction, Plaintiff's Motion Should Be Granted.

In a case such as this, the removing party bears the burden of proving the existence of facts to establish federal subject matter jurisdiction and there is a "strong presumption" against removal jurisdiction. Gaus v. Mills Inc., 980 F.2d 564, 566 (9th Cir. 1992); *see also* Boyer v. Snap-On Tools, Corp., 913 F.2d 108, 111 (3rd Cir. 1990)(on a motion to remand, the court is to "resolve all contested issues of substantive fact in favor of the plaintiff…"). As the Ninth Circuit recognized, "[t]he removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004). Thus, the removing party bears the burden of extinguishing any doubt as to the district court's jurisdiction. Gaus, 980 F.2d at 566 (district courts are to reject removal jurisdiction "if there is any doubt as to the right of removal in the first instance").

Here, Defendant cannot escape the fact that it carries the burden and that this burden has not been satisfied. Even assuming, *arguendo*, that Defendant did provide a measurable amount of evidence supporting its burden, this can hardly be enough so as to extinguish this Court's doubts as to its jurisdiction.

/ / /

/ / /

/ / /

## III.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that his Motion to Remand to State Court be granted.

DATED: August 22, 2008                    LINDSAY & STONEBARGER

HARRISON PATTERSON & O'CONNOR LLP


By:   /s/  Gene J. Stonebarger
     Gene J. Stonebarger
     Attorneys for Plaintiff and the Class

1  James M. Lindsay, State Bar No. 164758
   Gene J. Stonebarger, State Bar No. 209461
2  LINDSAY & STONEBARGER
   A Professional Corporation
3  620 Coolidge Drive, Suite 225
   Folsom, CA 95630
4  Telephone: (916) 294-0002
   Facsimile: (916) 294-0012
5
   James R. Patterson, State Bar No. 211102
6  Harry W. Harrison, State Bar No. 211141
   HARRISON PATTERSON & O'CONNOR LLP
7  402 West Broadway, 29th Floor
   San Diego, CA 92101
8  Telephone: (619) 756-6990
   Facsimile: (619) 756-6991
9
   Attorneys for Plaintiff and the Class
10

11                    UNITED STATES DISTRICT COURT
12
                      SOUTHERN DISTRICT OF CALIFORNIA
13

14 TIMOTHY DEEHAN, on behalf of himself and  ) CASE NO.: 08-CV-1009-BTM-JMA
   all others similarly situated,            )
15                                           ) **CLASS ACTION**
                   Plaintiff,                )
16                                           ) **CERTIFICATE OF SERVICE**
             vs.                             )
17                                           )
   AMERIGAS PARTNERS, L.P., a Delaware       )
18 limited partnership, dba AMERIGAS; and    )
   DOES 1 through 50, inclusive,             )
19                                           )
                   Defendants.               )
20 _____)

21
22
23
24
25
26
27
28

CERTIFICATE OF SERVICE            1            CASE NO.: 08-CV-1009-BTM-JMA

I am a citizen of the United States and am employed in Sacramento County. I am over the age of eighteen (18) years and not a party to this action; my business address is 620 Coolidge Drive, Suite 225, Folsom, California 95630.

On August 22, 2008, I caused the following document(s) to be served to each of the parties listed herein:

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT'S OPPOSITION TO REMAND**

| | |
|---|---|
| **Michael Patrick McCloskey, Esq.**<br>Foley & Lardner LLP<br>402 West Broadway, Suite 2100<br>San Diego, CA 92101<br>Phone: (619) 234-6655<br>Fax: (619) 234-3510<br>mmccloskey@foley.com | *Attorneys for Defendant AmeriGas Partners, LP* |
| **Harry W. Harrison**<br>Harrison Patterson & O'Connor<br>402 West Broadway, 29th Floor<br>San Diego, CA 92101<br>Phone: (619)756-6990<br>Fax: (619) 756-6991<br>hharrison@hpolaw.com | *Co-Counsel for Plaintiff Timothy Deehan and the Putative Class* |

☒ **BY ELECTRONIC MAIL TRANSMISSION:** A PDF format copy of such document(s) was sent by electronic mail transmission through the CM/ECF system to each such person at the e-mail address listed above. The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Folsom, California, on August 22, 2008.

*Delene Havens*
Delene Havens

---

LINDSAY & STONEBARGER
A Professional Corporation

CERTIFICATE OF SERVICE        2        CASE NO.: 08-CV-1009-BTM-JMA